# In re Anonymous No. 19 D.B. 76

Disciplinary Board Docket no. 19 D.B. 76.

ARCHBOLD, *Board Member*, November 29, 1976—Pursuant to Rule 208(d) of the Pennsylvania Rules of Disciplinary Enforcement (rules), the Disciplinary Board of the Supreme Court of Pennsylvania (board) submits its findings and recommendations to your honorable court with respect to the above petition for discipline No. 19 D.B. 76 against respondent.

## I. HISTORY OF PROCEEDINGS

On May 21, 1976, the office of disciplinary counsel filed before the board a petition for discipline against respondent charging him with the following:

## Charge 1

Charge 1 arises out of respondent's undertaking to represent a resident of California who had a claim for personal injuries against a company located in Pennsylvania. The charge alleges that after respondent had undertaken to represent this person, he failed to file suit in the applicable period of limitations and that he had otherwise neglected the matter by failing to respond to inquiries from referring counsel or from the client and by failing to advise the client that the statute of limitations had expired without suit being filed. It is charged that respondent's actions involved violations of:

1. D.R. 1-102(A)(4)—dealing with conduct involving dishonesty, fraud, deceit or misrepresentation.

2. D.R. 6-101(A)(3)—dealing with neglect of a legal matter entrusted to him.

3. D.R. 6-102(A)—dealing with attempting to limit his liability to his client for his personal malpractice. (This allegation was withdrawn.)

## Charge 2

Charge 2 arises out of fees charged by respondent in connection with his representation of a client who, as a result of injuries suffered during the course of his employment, had a claim against a third party. Respondent negotiated a settlement of the claim for the sum of $30,000, from which he retained $12,000 pursuant to an agreement with the client which provided for a 40 percent contingent fee. Respondent also withheld the sum of $5,299.16 from the proceeds of the settlement, which sum reflected the amount which had been paid by the workmen's compensation insurance

carrier which, by virtue of such payment, had subrogation rights against the settlement fund, under the Pennsylvania Workmen's Compensation Law. The charges against respondent arise out of respondent's delay in forwarding these funds to the compensation carrier; from his failure, during the period of delay, to deposit that part of the settlement representing the carrier's subrogation claim into an identifiable bank account in which no funds of his own were deposited; and from the fact that he never disclosed to his client that he was receiving an additional fee from the amount of the settlement which was payable to the compensation carrier. It is charged that respondent's conduct in connection with this matter involved violations of:

1. D.R. 1-102(A)(4)—dealing with conduct involving dishonesty, fraud, deceit or misrepresentation.

2. D.R. 5-105(C)—dealing with accepting and/or continuing employment if the interests of another client may impair the independent professional judgment of the lawyer.

3. D.R. 5-107(A)—dealing with accepting compensation for legal services from one other than respondent's client, except with the consent of the client, after full disclosure.

4. D.R. 6-101(A)(3)—dealing with neglect of a legal matter entrusted to him.

5. D.R. 9-102(A)—dealing with preserving the identity of funds and property of a client.

## Charge 3

Charge 3 arises out of respondent's representation of certain parties in connection with a real estate transaction, in which he was given $90 to

pay for the cost of a survey which had been made of the property. It is charged that he neglected to deliver this sum to the surveyor for several months, notwithstanding repeated requests. It is also charged that he failed to deliver copies of blueprints of the survey to his clients despite their requests. The petition alleges that respondent's conduct in this matter constituted violations of:

1. D.R. 6-101(A)(3)—dealing with neglect of a legal matter entrusted to him.

2. D.R. 9-102(B)(4)—dealing with failure to promptly pay or deliver to the client as requested by a client the funds, securities, or other properties in the possession of the lawyer which the client is entitled to receive.

## Charge 4

Charge 4 arises out of respondent's delay in making distribution of the proceeds of a settlement which he negotiated on behalf of a client. The petition alleges that the settlement was negotiated and the funds received in July of 1974, but no distribution was made to the client until some time in November of 1974. Respondent retained the sum of $83.80 from the settlement proceeds and undertook to pay a hospital bill in this amount on behalf of the client, but had neglected to do so.

The petition charges that respondent's conduct involved violations of:

1. D.R. 1-102(A)(4)—dealing with conduct involving dishonesty, fraud, deceit or misrepresentation.

2. D.R. 6-101(A)(3)—dealing with neglect of a legal matter entrusted to him.

3. D.R. 7-101(A)(2)—dealing with intentional failure to carry out a contract of employment entered into with a client for professional services.

4. D.R. 9-102(B)(4)—dealing with failure to pay or deliver to the client as requested by a client the funds, securities or other properties in the possession of the lawyer which the client is entitled to receive.

On June 28, 1976, an answer to the petition for discipline was filed by respondent. After respondent was notified of a hearing date by hearing committee [ ], respondent filed an amended answer on July 16, 1976 with new matter.

Hearing committee [ ], composed of [ ] presided over the hearing held on July 28, 1976 commencing at 10:00 a.m. in the District [ ] Office, [ ] Pennsylvania. Respondent, [ ] and his attorney, [ ], Esq. were present. The office of disciplinary counsel was represented by [ ], Esq. The record was closed at 1:15 p.m. on the same date and the notes of testimony were transcribed and placed in the hands of the hearing committee on August 16, 1976.

The only witness called to testify was respondent, [ ]. Disciplinary counsel proved its case through the use of exhibits and stipulations which are of record. The testimony adduced from respondent revealed that there was no material factual dispute, and that the issues involved related to the interpretation of respondent's admitted conduct in the light of the letter and spirit of the disciplinary rules. In this regard, respondent admitted that his conduct involved violation of Disciplinary Rule 6-101(A)(3), by reason of his neglect in each of the 4 charges. Respondent further admitted that in connection with charge 2, he had violated Disciplinary

Rule 9-102(A) by depositing funds of the client in an unauthorized bank account.

## II. FINDINGS OF FACT

The stipulations of the parties received as Exhibit 3 is adopted by the board as it was by the hearing committee, as the agreed upon basic facts.

The board finds as follows:

A. With respect to Charge 1, the board finds that respondent was engaged to represent plaintiff in a personal injury case, who was injured on August 19, 1972. Respondent was engaged on November 22, 1972, and subsequently received the necessary cooperation from his client to prepare the case and to negotiate with defendant's insurance carrier. As a follow up, respondent was advised on July 26, 1974, that the statute of limitations would run on August 19, 1974. Respondent did not file suit, and did not respond to communications of August 22, 1974, December 10, 1974 and January 21, 1975. Respondent received an offer in settlement of $1,000 after the statute of limitations had run, and he communicated this offer to his client on February 20, 1975, without disclosing to his client that the statute of limitations had run, and as of March, 1976, respondent had still not advised his client that the statute of limitations had run without suit having been instituted. In fact, respondent had not communicated with his client since the above mentioned telephone conversation of February 20, 1975.

B. With respect to Charge 2, one [A] was injured in the course of his employment and retained respondent to represent him in his personal injury claim, as of February 7, 1973. [A] received workmen's compensation benefits and on November 19,

1973, respondent wrote, notifying the workmen's compensation carrier that he was preparing to settle [A's] personal injury claim and inquiring what the amount of the subrogation interest was. Respondent followed up this communication with a letter dated December 6, 1973, confirming with the workmen's compensation carrier that he would protect its claim in the sum of $5,299.16 out of the proceeds of his client's settlement. Respondent effected the execution of the settlement document on December 6, 1973, in consideration of the sum of $30,000. On December 17, 1973, respondent distributed the sum of $12,646 to his client and retained $12,000 as his fee, and an additional $5,299.16 representing the subrogation claim of the workmen's compensation carrier. One assumes that the costs withheld were in the sum of $54.84, making a total of $30,000. Respondent then deposited the workmen's compensation carrier's share of $5,299.16 into a savings account which respondent had with his wife, and not into an escrow account or other identifiable bank account and made no ledger entry reflecting this interest. Respondent had not even notified the workmen's compensation carrier of his possession of these funds as of August 26, 1974. After communication from the Disciplinary Board of the Supreme Court, respondent disbursed the subrogation funds to the workmen's compensation carrier on or about September 9, 1974, and deducted a 25 percent attorney's fee. Respondent had no fee agreement with the subrogation carrier. Respondent had a 40 percent contingent fee understanding (not written) with [A]. When respondent deducted 25 percent, he had no understanding of any kind with the workmen's compensation carrier. Respondent did not advise the workmen's compensation carrier that the fee

had been paid by [A], and he did not advise [A] that he received a 25 percent fee from the workmen's compensation carrier. Respondent charged a double fee for the same services in that he collected a full 40 percent on $30,000 in the amount of $12,000 from [A], and then deducted from his client's share of the $30,000 settlement the full amount of the subrogation interest of $5,299.16. He then deducted another 25 percent out of the $5,299.16, giving to himself a bonus of $1,325. Since the workmen's compensation statute affords to [A] the right to a pro rata allocation of attorney's fees to the portion of the recovery representing the subrogation interest of the workmen's compensation carrier, respondent had a duty to exact the sum of $2,120 from the workmen's compensation carrier, and remit to the carrier $3,180. Respondent's deliberate and calculated and planned charging of each of his clients for the identical services cost [A] $2,120, while at the same time netting to respondent $1,325 of unearned fees. When respondent did settle with workmen's compensation carrier, he withdrew the funds from the savings account in an amount just sufficient to cover the disbursement of $3,975 which he deposited in his attorney's account, and then remitted to the workmen's compensation carrier. Respondent never offered to account or settle or repay [A] after he acknowledged, in the disciplinary proceedings, that it was wrong for him to have charged the double fee described above, and [A] still has not received the $2,120 in question.

C. With regard to Charge 3, respondent came into possession of two sums of money in the amount of $45 each to form a total fund of $90 with which to

pay the costs for a survey in a real estate transaction in which he represented both the buyer and the seller. In spite of repeated demands that the $90 be paid over to the survey firm, respondent failed to pay over this sum of money until after January 10, 1975, although settlement took place on August 2, 1974 when respondent received the funds for the survey which had been prepared as of May 28, 1974. It was not until after service upon respondent of the petition of disciplinary counsel that respondent finally paid the bill by a check dated June 21, 1976.

D.  With regard to Charge 4, respondent received the proceeds of settlement of a personal injury claim on July 16, 1974, and withheld from his client $83.80 with which to pay the bill of a hospital, and an additional $120 to pay the bill of a doctor. Despite prior attempts by his client to pursuade him to do so, respondent still had not paid the bill by August 15, 1975, on which date petitioner dispatched a letter of allegations to him. Once again, respondent had not paid the bill as of the time of service of the petition by disciplinary counsel. Once again, he paid the bill by a check dated subsequent to the service of the petition on June 8, 1976. Respondent never proved that he paid the bill of the doctor in the sum of $120, and although the record was held open by the hearing committee, following the conclusion of testimony under an agreement entered into between respondent's counsel and disciplinary counsel, to afford respondent an opportunity to prove that he paid the $120 to the doctor; no further communication was received by the hearing committee or disciplinary counsel on this subject from respondent or his counsel. As of the time of the hear-

ing, respondent still did not maintain any ledger with regard to escrow funds and had no ledger at the time of his disbursement of the proceeds of the personal injury claim settlement described above.

## III. DISCUSSION

It is noteworthy that in each of the four charges respondent has already admitted a violation of Disciplinary Rule 6-101(A)(3), dealing with the neglect of a legal matter entrusted to him. Respondent has admitted in connection with Charge 2 that he violated Disciplinary Rule 9-102(A), by depositing the funds of his client, the workmen's compensation carrier, in an unauthorized bank account, which we must assume was bearing interest for himself and respondent's wife.

The hearing committee went further than respondent's admissions in finding that in Charges 3 and 4, respondent had violated Disciplinary Rule 9-102(B)(4), reasoning that respondent's failure to pay the survey fee of $90 and the medical bill of $83.80 out of funds specifically provided by his clients in those respective cases for that purpose, constituted a failure to promptly pay or deliver to the client funds in his possession. The committee correctly reasoned that failing to promptly pay or deliver at the direction of the client was the same as failing to promptly pay or deliver to the client under the rule.

The committee erred in not concluding that this act also constituted a violation of Disciplinary Rule 7-101(A)(2), with regard to Charge 4 (he had not been accused of this violation with regard to Charge 3 in the petition). When respondent specifically withheld the sum of $83.80 from his settlement of the proceeds of a personal injury claim with

his client on the representation that he would pay the bill of [B] Hospital, he entered a specific contract of employment for the rendering and performance of professional services. Respondent ignored his client's repeated request to perform and carry out this obligation under the contract. Respondent failed and refused to do so. His client went to the Disciplinary Board, and only after a petition for discipline was filed for this specific purpose (and others) did respondent pay the sum of $83.80 to carry out his contractual undertaking for which he had been paid out of the proceeds of settlement.

The board is struck with the nature of this pattern of neglect that pervades each of the four charges in the respect of totally ignoring repeated requests of clients to perform his duty. Much more serious is the pattern displayed in Charge 2, Charge 3 and Charge 4 with regard to the manner in which respondent handled the money of his clients. In those cases, he held sums of $5,299.16 and of $90 and of $83.80 respectively.

The board is deeply troubled by the aspect of this case which gives the appearance, although not charged or proven, that interest was being earned by respondent through the use of his client's moneys, through the medium of making deposits in a savings account held jointly with his wife, while at the same time, not maintaining a level of deposit sufficient to satisfy these obligations in any kind of attorney's account. Respondent blandly retorts that he always had sufficient funds to satisfy these obligations, but never does he explain the necessity for keeping these funds in a savings account. The board is unwilling to allow this action to go unnoticed and unchallenged, and unanimously denounces the practice as unethical.

The board denounces as unethical the practice of

charging a double fee as respondent did while serving "two masters." The fiduciary duty of an attorney is readily apparent wherein he represents a client through whom he obtains the opportunity to represent the subrogation interest of another claimant out of the same fund. Respondent's duty to advise his original client of the proffered employment of the subrogation carrier is apparent. Respondent's duty to exact from the subrogation carrier its pro rata share of attorney's fees to alleviate the burden of attorney's fees borne by his original client is also readily apparent. The attorney's position of trust in receiving from the workmen's compensation carrier the attorney's fee already paid by his original client, [A], is equally apparent. Respondent's act in pocketing the second fee without accounting to his original client and reimbursing him with said fee is an unethical act. The failure to advise his original client of the subsequent transactions with regard to the subrogation claim was unethical conduct and this is particularly true when it is recalled that he entered into his subrogation contract on the same day that respondent arranged for the execution of the settlement agreement with the tort-feasor.

The board is distressed with respondent's demonstrated knowledge of subrogation practice (N.T. p. 59), since this leads the board to believe that respondent has always handled these matters in this fashion. Respondent quite readily asserts that this is the way he believes other attorneys have handled such transactions involving subrogation (N.T. p. 36, 46). Respondent did note that there were certain subrogation cases that would have required him to ask the subrogation carrier to reduce the amount of its claim. This, of course, reflects respondent's

knowledge that there is a potential conflict of interest in representing a subrogation carrier, especially where there is contributory negligence on the part of the original client (N.T. p. 50, 51).

Since respondent requested information with regard to the workmen's compensation subrogation interest on November 19, 1973, and confirmed to the carrier that he would protect its subrogation claim in the specific amount of $5,299.16 on December 6, 1973, which was the same day he effected the execution of the settlement document with his client, [A], the board is led to the inevitable conclusion that respondent intended to demand a fee from the workmen's compensation carrier on December 6, 1973. When he made settlement 11 days later, respondent practiced a deception upon [A], when he made a face to face distribution of proceeds of settlment, without advising [A] of the expectation by respondent of an additional fee out of the fund of $5,299.16 he retained from the share of his client, [A]. Respondent's only reply is, "I felt there was nothing more wrong with that than with taking the fee that was agreed upon with the client." (N.T. p. 68).

Each of the following cases primarily involved the neglect of a client's affairs by a respondent, and in each of these cases, public discipline was imposed:

Office of Disciplinary Counsel v. [Anonymous], II, No. 74 Disciplinary Docket No. 1 (No. 43 D.B. 73) (public censure);

Office of Disciplinary Counsel v. [Anonymous], II, No. 94 Disciplinary Docket No. 1 (No. 39 D.B. 74) (public censure);

Office of Disciplinary Counsel v. [Anonymous],

No. 92 Disciplinary Docket No. 1 (No. 26 D.B. 74) (3 month suspension);

Office of Disciplinary Counsel v. [Anonymous], No. 85 Disciplinary Docket No. 1 (No. 48 D.B. 73) (one year suspension);

Office of Disciplinary Counsel v. [Anonymous], No. 105 Disciplinary Docket No. 1 (Nos. 40 and 47 D.B. 74) (public censure).

## IV. RECOMMENDED DISCIPLINE

The board finds that respondent has been in violation of all of the disciplinary rules charged to have been violated in the petition for discipline. Disciplinary Rule 1-102(A)(4), dealing with conduct involving dishonesty, fraud, deceit or misrepresentation was violated only in Charge 2, dealing with the workmen's compensation subrogation claim, wherein respondent was guilty of misrepresentation in informing his client that he would pay over $5,299.16 where, in fact, he knew he would pay over to the workmen's compensation carrier a sum considerably less than that, retaining the balance for himself. The board does not find a violation of Disciplinary Rule 1-102(A)(4) with regard to Charge 1 or Charge 4, and respondent was not so charged with regard to Charge 3.

The board interprets the decision of the Supreme Court—[Anonymous], No. 129, Disciplinary Docket No. 1 Supreme Court; No. 66 D.B. 75 Disciplinary Board—to empower and encourage the board to recommend to the Supreme Court necessary actions required of a respondent in appropriate cases in order to make whole clients whom they have wronged. In the [Anonymous] case, the court ordered that he " . . . immediately file the necessary accounts of the [C] estates and guardianship so that

final distribution can be made" as a part of its ordering that [anonymous] be subjected to public censure under the order of September 2, 1976. In the matter of [respondent], the board does nót feel that public censure is an adequate measure of discipline unless respondent is ordered to make whole Mr. [A] by the repayment of the double fee of $1,325.00 to Mr. [A].

Although the hearing committee recommended private reprimand before the board, it is the recommendation of the board that respondent be disciplined by the imposition of public censure by the Supreme Court, provided that respondent shall first present proof of payment to his client, [A], in the sum of $1,325.

*Mr. Harrington disqualified himself for good reason.

Mr. Aponick concurs in the recommendation that the respondent be disciplined by the imposition of public censure but dissents for the reason that the Board should not recommend a requirement that the respondent return fees and thereby suggest enforcement through disciplinary proceedings of a purely civil claim for damages.

Mr. Anderson was absent and did not participate in the adjudication.

## SUPPLEMENTAL REPORT AND RECOMMENDATIONS OF THE DISCIPLINARY BOARD OF THE SUPREME COURT OF PENNSYLVANIA

To the Honorable Chief Justice and Justices of the Supreme Court of Pennsylvania:

UNKOVIC, *Board Member,* August 9, 1977—In accordance with the statement of the Supreme Court by letter dated April 29, 1977, that "overseeing restitution in this and similar cases is the board's responsibility" and a further request for

"the board to submit a new recommendation in this case after a consideration of all the pertinent facts," the board submits its findings and recommendations to your honorable court with respect to the above petition for discipline, No. 19 D.B. 76, against respondent.

## I. HISTORY OF PROCEEDINGS

1. On November 29, 1976, the report and recommendations of the board was forwarded to the Supreme Court recommending public censure be administered to respondent provided that respondent shall first present proof of payment to his client, [A], in the sum of $1,325. A concurring and dissenting opinion filed by Board Member John J. Aponick, Jr. was also forwarded to the court.

2. On January 28, 1977, the matter was remanded by the Supreme Court for reconsideration by the board.

3. On March 25, 1977, the board reconsidered the matter and determined that the original recommendation had been consistent with previous action and resubmitted its recommendation to the Supreme Court without change.

4. On April 29, 1977, the matter was remanded by the Supreme Court with the comment that it is the court's decision that overseeing restitution in this and similar cases is the board's responsibility and requested the board to submit a new recommendation after consideration of all pertinent facts.

5. On May 13, 1977, the board reconsidered the matter and action was taken thereon to remand the matter to the hearing committee [ ] to pursue the subject of restitution, if appropriate.

6. A conference was held on July 6, 1977, and was attended by the chairman of hearing committee [ ], [ ], Esq. [ ], Esq., Assistant Disciplinary Counsel; and [ ], Esq., counsel for respondent.

7. A supplemental report of hearing committee [ ] was submitted on July 14, 1977. That supplemental report discloses that respondent made restitution to [A] in the amount of $1,325 on July 5, 1977. It is apparent from the stipulation testimony and accompanying affidavit submitted to the hearing committee that respondent made no effort to make restitution prior to July 6, 1977.

8. Thus the question of restitution originally raised by the Disciplinary Board in its report to the court dated November 29, 1976, is moot and the sole remaining question concerns the appropriate discipline to be imposed for the professional misconduct involved.

9. In view of the aforesaid restitution the Disciplinary Board withdraws its recommendation of November 29, 1976 and substitutes the following.

## II. RECOMMENDATION

The Disciplinary Board recommends that respondent be disciplined by the imposition of public censure by the Supreme Court.

Mr. Harrington did not participate in the adjudication.

## CONCURRING AND DISSENTING REPORT

APONICK, *Board Member*, November 22, 1976—I concur with the recommendation of the board that respondent be disciplined by the imposition of public censure; however, I cannot agree that such discipline be contingent upon return of any funds by respondent to his client, nor can I agree

that this board should recommend an order that such funds be returned.

The board and the Supreme Court have stated on numerous occasions that sanctions imposed upon an attorney are designed primarily not for their punitive effect but for the positive effect of protecting the public and the integrity of the Courts from unfit lawyers. See Moyerman's Case, 312 Pa. 555, 564, 167 Atl. 579 (1933). The recommendation of the majority in the present case seems contrary to that principle, in that it appears that the severity of the discipline will be dependent upon respondent's ability to return the sum in question. If respondent is financially unable to return the sum, would the board then recommend more severe discipline?

Furthermore, the liability of respondent to his client for return of fees would seem to be a purely civil matter. I do not feel that this board should suggest in any manner whatsoever that the disciplinary procedures established by the court can be used as a tool for the recovery of money damages.

## ORDER

EAGEN, *C.J.*, And now, August 2, 1977, the supplemental report and recommendations of the Disciplinary Board of the Supreme Court of Pennsylvania, dated August 9, 1977, are approved; and it is ordered that the said [respondent] be subjected to public censure by the Supreme Court as provided in Rule 204(3) of the Rules of Disciplinary Enforcement at the session of this court commencing September 26, 1977, at Pittsburgh.